**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

GARY FRANK THOMPSON, JR.,

                   Plaintiff,

vs.                                 Case No.:  3:13-cv-1242-J-JRK

CAROLYN W. COLVIN
Acting Commissioner of Social Security,

                   Defendant.
_____/

## OPINION AND ORDER[1]

### I.  Status

      Gary Frank Thompson, Jr. ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for supplemental security income ("SSI").  Plaintiff's alleged inability to work is a result of schizophrenia.  See Transcript of Administrative Proceedings (Doc. No. 14; "Tr." or "administrative transcript"), filed February 5, 2014, at 31-32, 55, 57, 113.  On July 26, 2010, Plaintiff filed an application for SSI, alleging an onset date of July 1, 2008.  Tr. at 96-102.  Plaintiff's application was denied initially, Tr. at 55-56, 59-61, and was denied upon reconsideration, Tr. at 57-58, 63-64.

      On March 13, 2012 an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff and a vocational expert ("VE") testified.  Tr. at 25-54.  The ALJ issued a Decision on June 13, 2012, finding Plaintiff not disabled through the date of the Decision.  Tr. at 11-20.  On August 14, 2013, the Appeals Council denied Plaintiff's request for review, id. at 1-6,

---

[1]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  See Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 13), filed February 5, 2014; Order of Reference (Doc. No. 16), entered February 7, 2014.

thereby making the ALJ's Decision the final decision of the Commissioner.  On October 15, 2013, Plaintiff commenced this action under 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff makes three arguments on appeal.  See Plaintiff's Brief (Doc. No. 18; "Pl.'s Br."), filed April 7, 2014.  First, Plaintiff claims that the ALJ failed to adequately explain his reasoning for not crediting the opinions of the state agency nonexamining psychologists as far as Plaintiff's mental limitations.[2]  See Pl.'s Br. at 7-12.  Second, Plaintiff claims that the ALJ failed to articulate good cause for not crediting the opinion of Dr. Sanchez, Plaintiff's treating psychiatrist.  See id. at 12-15.  Third, Plaintiff claims that the ALJ failed to adequately explain his reasoning for not crediting one of the examining consultant opinions.[3]  See id. at 15-20.  Regarding the examining and non-examining opinions, Plaintiff emphasizes that "[t]he ALJ accorded 'less weight' to all the opinions from state agency nonexamining and examining consultants (except [Allison] Keiter[, Psy.D.[4]]) in a single sentence, without specificity, because they were 'less consistent with the record as a whole.'"  Id. at 7, 15 (referring to Tr. at 18) (emphasis added).  On June 6, 2014, Defendant filed a memorandum addressing Plaintiff's arguments.  See Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.").

---

[2]     Referring to Leigh Rosenberg, Psy.D. and Jorge Pena, Ph.D.

[3]     Referring to Lynn Harper-Nimock, M.D.

[4]     Dr. Keiter is the state examining psychologist whose opinion was afforded significant weight by the ALJ.

After a thorough review of the entire record and consideration of the parties' respective memoranda, the Commissioner's final decision is due to be affirmed for the reasons explained herein.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry.  See Tr. at 13-20.  At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since July 7, 2010, the application date."  Tr. at 13 (emphasis and citation omitted).  At step two, the ALJ found that Plaintiff suffers from "the following severe impairment: schizophrenia."  Tr. at 13 (emphasis and citation omitted).  At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the

---

[5]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. at 13 (citation omitted).

Next, the ALJ, after careful consideration, determined the following regarding the Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff can] perform a full range of work at all exertional levels but with the following non-exertional limitations: [Plaintiff] is limited to performing simple, routine, repetitive tasks.  [Plaintiff] retains the ability to relate adequately to coworkers and supervisors. [Plaintiff] is limited to only occasional contact with the public. [Plaintiff] is limited to work settings where changes are infrequent and gradually introduced, and which do not require a high production pace.

Tr. at 14-15 (emphasis omitted).  At step four, the ALJ found Plaintiff "has no past relevant work."  Tr. at 19 (emphasis and citations omitted).  At step five, after considering Plaintiff's age (nineteen (19) on the alleged disability onset date), education (limited), ability to communicate in English, lack of work experience, and RFC, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform[.]" Tr. at 19 (emphasis and citations omitted).  Those jobs include "cleaner," "kitchen helper," "café attendant," and "addresser."  Tr. at 20 (capitalization omitted).  The ALJ concluded that Plaintiff "has not been under a disability . . .  since July 7, 2010, the date the application was filed[.]" Tr. at 20 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322

(11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'"  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007,1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

The Court must resolve the following:  (1) whether the ALJ erred by failing to adequately explain his reasoning for discrediting the opinions of the state agency psychologists; (2) whether the ALJ erred by failing to articulate good cause for not crediting the opinion of Dr. Sanchez, Plaintiff's treating psychiatrist; and, (3) whether the ALJ erred by failing to adequately explain his reasoning for not crediting Dr. Harper-Nimock's examining consultant opinion. Because each issue relates to medical opinions, the undersigned addresses all of Plaintiff's issues together.  The undersigned first summarizes the applicable

law with respect to medical opinions, then summarizes the relevant opinions, and lastly discusses the ALJ's analysis of them.

### A.    Applicable Law Relating to Medical Opinions[6]

The Regulations establish a "hierarchy" among medical opinions that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)).   The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."   20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[7] the Regulations instruct ALJs how to properly weigh such a medical opinion.  See 20 C.F.R. § 404.1527(c).  Because treating

---

[6]    "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

[7]    A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition.  See 20 C.F.R. § 404.1502.

physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation

omitted).  Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence.  <u>Broughton v. Heckler</u>, 776 F.2d 960, 962 (11th Cir. 1985) (citing <u>Spencer v. Heckler</u>, 765 F.2d 1090, 1093-94 (11th Cir. 1985)).  However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence.  <u>Oldham v. Schweiker</u>, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981) (citation omitted).

An ALJ is required to consider every medical opinion.  <u>See</u> 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive").  While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," <u>Oldham</u>, 660 F.2d at 1084 (citation omitted); <u>see also</u> 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing <u>Sharfarz v. Bowen</u>, 825 F.2d 278, 279 (11th Cir.1987)); <u>see also</u> <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1212 (11th Cir. 2005); <u>Lewis</u>, 125 F.3d at 1440.  "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'"  <u>Winschel</u>, 631 F.3d at 1179 (quoting <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981)).

### B.  Relevant Medical Opinions

**1.  Eduardo A. Sanchez, M.D., P.A. (treating psychiatrist).**  Dr. Sanchez's office notes, as well as a letter sent to the ALJ on March 29, 2012, indicate that  Plaintiff

began treatment with Dr. Sanchez on July 24, 2008. Tr. at 241-51, 295-96.   While Dr. Sanchez's office notes are nearly illegible, his letter to the ALJ provides some insight into Plaintiff's course of treatment and background.   According to Dr. Sanchez, Plaintiff carries the diagnosis of paranoid schizophrenia. Tr. at 295. Since Plaintiff's initial visit, he has been taking antipsychotic medications.   Tr. at 295.   Dr. Sanchez noted that he regularly sees Plaintiff, once every three months, for medication management. Tr. at 295. Additionally, Dr. Sanchez pointed out that Plaintiff has a history of drug abuse, but to Dr. Sanchez's knowledge, Plaintiff has been abstinent from drugs and alcohol since beginning treatment. Tr. at 295.

Dr. Sanchez also discussed Plaintiff's diagnosis of schizophrenia paranoid type (chronic/severe) and how this disorder has affected his daily life. Tr. at 295-96.   Dr. Sanchez stated that Plaintiff's initial symptoms of his mental illness (psychotic thinking, overt delusions, hallucinations, and agitation) "have all subsided with his pharmacotherapeutic regimen," but that Plaintiff continues to suffer from "severe and persistent[] negative signs of schizophrenia." Tr. at 295.  These negative signs "consist of withdrawnness, lack of interest, difficulty with critical thinking, episodes of depression, lack of interest in society and age appropriate interaction."  Tr. at 295.   Additionally, Dr. Sanchez stated that Plaintiff is "withdrawn and practically non-functional."  Tr. at 295.  Dr. Sanchez opined that Plaintiff's negative symptoms have "rendered him unable to participate in any type of productive task . . . ."  Tr. at 295.

**2.  Allison Keiter, Psy. D. (examining psychological consultant).**  On March 29, 2011, Dr. Keiter performed a psychological evaluation on Plaintiff.  Tr. at 269-73.  As

background, Dr. Keiter noted that, on the day of the examination, Plaintiff drove himself approximately 20 miles to her office.  Tr. at 270.  Plaintiff also reported that he lived with his mother, that he had completed high school, and that he was unemployed.  Tr. at 270.

Dr. Keiter formed the following opinions: "[u]pon examination, [Plaintiff's] demeanor and responsiveness to questions was cooperative, but evasive at times.  His manner of relating, social skills, and overall presentation was poor due to his inappropriate affect."  Tr. at 271.  Dr. Keiter noted that Plaintiff's thought processes seemed to be confused, and that his affect was "[f]lat and inappropriate in speech and thought content as he smiled incongruently with his speech and conversation."  Tr. at 271.  She opined that Plaintiff's intellectual functioning is in the below average to borderline range,  and that Plaintiff's insight and judgment are poor.  Tr. at 272.

Dr. Keiter also assessed Plaintiff's mode of living and current functioning.  Tr. at 272. Plaintiff reported that he is able to complete many tasks independently, including the following: (1) dressing, bathing, and grooming himself; (2) cooking; (3) cleaning; (4) shopping; (5) managing money; and (6) driving.  Tr. at 272.  Plaintiff reported good relationships with friends and family and that he babysits his niece three times per week.  Tr. at 272.  Dr. Keiter assigned Plaintiff a global assessment of functioning (GAF) score of 68.  Tr. at 273.

In conclusion, Dr. Keiter made the following Medical Source Statement:

> Vocationally, [Plaintiff] is able follow and understand simple directions and instructions.  He is able to perform simple and more complex tasks independently.  He is able to maintain attention and concentration and a regular schedule. He is able to learn new tasks.  He may have difficulties at times making appropriate decisions and relating adequately with others.  He may have difficulties at times appropriately dealing with stress. Observations made at the time of the evaluation concur with

[Plaintiff's] report.   However, he did appear to be somewhat evasive occasionally during the evaluation.

Tr. at 272.

**3. Lynn Harper-Nimock, M.D. (examining medical consultant).**   At the request of the state disability agency, Dr. Harper-Nimock examined Plaintiff on February 2, 2011.  Tr. at 252-59.  Dr. Harper-Nimock completed an Internal Medicine Examination and a Range of Motion Report Form.  See Tr. at 252-56 (Internal Medicine Examination); Tr. at 257-59 (Range of Motion Report Form).  Dr. Harper-Nimock noted that Plaintiff's chief complaints were excessive weight gain and abnormal sleeping patterns, reporting a 100 pound weight gain and a sleeping pattern of 12 to 16 hours a day.  Tr. at 253.  Additionally, Plaintiff reported waking up from sleep at least three to four times a night.  Tr. at 253.  Dr. Harper-Nimock's examination revealed that Plaintiff could not walk on his heels or toes and that he was unable to squat.  Tr. at 254.  The examination also revealed a mild trapezius muscle spasm,  decreased flexion, extension, lateral flexion, decreased rotatory motion bilaterally in the lumbar spine, and decreased range of motion of hips bilaterally.  Tr. at 254-55.  Lastly, Dr. Harper-Nimock stated that Plaintiff has mild to moderate limitations for prolonged standing, walking, and climbing.  Tr. at 256.  Plaintiff performed within normal ranges in all other categories.  Tr. at 257-59.  Ultimately, Dr. Harper-Nimock diagnosed Plaintiff with obesity, sleep disorder, previous right upper arm fracture, and nicotine dependency.  Tr. at 255.

**4. Leigh Rosenberg, Psy.D. (non-examining psychologist).**  On October 29, 2010, Dr. Rosenberg completed a Mental Residual Functional Capacity Assessment.  Tr.

at 223-26.  According to Dr. Rosenberg's assessment, Plaintiff is moderately limited in the following areas:  ability to understand, remember, and carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to work in coordination with or proximity to others without being distracted by them;  ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to interact appropriately with the general public; ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and ability to respond appropriately to changes in the work setting.  Tr. at 223-24.  However, in the majority of the abilities Dr. Rosenberg assessed, she found that Plaintiff is not significantly limited.  Tr. at 223-24.

In the narrative section of the assessment, Dr. Rosenberg offered additional opinions regarding Plaintiff's mental health and its possible effects in a work-related setting.  Tr. at 225.  According to Dr. Rosenberg, Plaintiff "would be able to understand and remember simple instructions, but may have difficulties with more detailed instructions."  Tr. at 225. Plaintiff "would be able to complete simple tasks [and] work procedures and make routine work decisions [but] may have difficulties maintaining attention and concentration for extended periods or when asked to complete multitasking assignments."  Tr. at 225.  She noted that Plaintiff "is avoidant with unfamiliar persons," but cooperates socially with persons he knows.  Tr. at 225.  She opined that he would be able to interact with individuals in authority adequately.  Tr. at 225.  However, he may have difficulty managing work stress and accepting criticism from coworkers or supervisors.  Tr. at 225.  Plaintiff "would be able to

avoid hazardous conditions and situations."   Tr. at 225.   He also would be able to appropriately adapt and consistently perform "within a reasonably supportive and structured work environment with a well defined and repetitive work task routine and no requirement for frequent social [or] public contact."  Tr. at 225.  Overall, Dr. Rosenberg found that Plaintiff "is capable of completing routine work related tasks on a regular basis from a mental standpoint."  Tr. at 225.

      **5.  Jorge Pena, Ph.D. (non-examining psychologist).**  On March 31, 2011, Dr. Pena completed a Mental Residual Functional Capacity Assessment.  Tr. at 274-77.  In his narrative, Dr. Pena highlighted Plaintiff's areas of strengths and weaknesses consistent with Dr. Rosenberg's opinions.  Tr. at 274-77.  Dr. Pena noted that Plaintiff "has a short attention span, becomes quickly frustrated when faced with time consuming tasks and experiences difficulties concentrating for extended periods of time and following complex instructions."   Tr. at 276.   Dr. Pena also opined that Plaintiff "is capable of retaining information, relating appropriately to others in a superficial fashion, following instructions and coping with financial transactions.  Tr. at 276.  Ultimately, Dr. Pena concluded that Plaintiff "appears to be mentally capable of carrying out simple, work related tasks but is likely to function at his best in well structured situations that do not require extensive, or intense, interactions with others."  Tr. at 276.

      **C.  Analysis of ALJ's Findings**

        **1.  Dr. Sanchez (treating psychiatrist)**

     As to Dr. Sanchez, the ALJ concluded "the opinion of Eduardo Sanchez, M.D., is not entitled to controlling or substantial weight because it is inconsistent with the objective

medical evidence of record and not supported by the record as a whole."  Tr. at 18.

Specifically, the ALJ observed that "[n]o other treating or examining source has assessed

limitations similar to those identified by Dr. Sanchez."  Tr. at 18.  The ALJ also highlighted

the fact that the reports by Plaintiff and his mother "directly refute Dr. Sanchez's opinion that

[Plaintiff] is withdrawn and practically non-functional  . . . ."  Tr. at 18 (referring to Tr. at 148-

56 (6E), 269-73 (8F)).

The crux of Plaintiff's argument regarding Dr. Sanchez's opinion is that the ALJ failed

to articulate good cause for not crediting it.  Pl.'s Br. at 12.  Before addressing whether good

cause is present, however, the undersigned must address Plaintiff's other allegation included

in his argument that reversal is necessary because the ALJ's analysis "was superficial and

relied upon exhibits that do not exist." Id. at 15.

Plaintiff points to the ALJ's reliance on reports from Plaintiff and his mother regarding

Plaintiff's abilities.  Id.  Plaintiff states that "[t]he ALJ cites to Exhibits 17F and 19F which are

not only not contained in the record but do not appear to exist according to the exhibit list."

Id. (emphasis and citation omitted).  While it is true the ALJ erroneously cited to exhibits 17F

and 19F that do not exist in the transcript, the undersigned finds this error harmless because

it is a simple clerical mistake, and because the ALJ cited the correct exhibits, 6E and 8F,

throughout the remainder of his discussion.  See Tr. at 18 (referring to Tr. at 148-56 (6E)),

269-73 (8F)).

As to Plaintiff's argument that the ALJ failed to seek clarification of Dr. Sanchez's

progress notes, the undersigned finds the argument without merit.  "It is well-established that

the ALJ has a basic duty to develop a full and fair record."  Ellison v. Barnhart, 355 F.3d

1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d)).  "Nevertheless, the claimant

bears the burden of proving that he is disabled, and, consequently, he is responsible for

producing evidence in support of his claim."  Id. (citing 20 C.F.R. § 416.912(a), (c)).  The

ALJ's "basic obligation to develop a full and fair record rises to a special duty when an

unrepresented claimant unfamiliar with hearing procedures appears before him." Cowart v.

Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).  However, status of

claimant's representative as non-attorney does not impose on the ALJ any heightened duty

to fully develop record, where claimant fails to challenge the qualifications of his

representative.  Ellison, 355 F.3d at 1276.  Thus, to remand a case for the ALJ's failure to

fully develop the record, there must be a showing that the claimant's rights to due process

have been violated because of such failure. Brown v. Shalala, 44 F.3d 931, 934-35 (11th Cir.

1995).  Prejudice exists when the record contains evidentiary gaps that may cause the ALJ

to reach an unfair determination due to the lack of evidence.  Id. at 935.

   In the instant case, Plaintiff fails to allege, suggest, or raise any issue regarding a

violation of due process or challenge the qualifications of his non-attorney representative.

As previously mentioned, both Plaintiff's representative and the ALJ noted that Dr. Sanchez's

progress notes were nearly illegible. Tr. at 43-44.  For this reason, on Plaintiff's request, Dr.

Sanchez wrote a medical opinion letter explaining Plaintiff's schizophrenia, treatment, drug

and alcohol use, symptoms, and medication. Tr. at 295-96.  Plaintiff recognizes in her brief

that Dr. Sanchez completed and submitted his opinion to the ALJ prior to the issuance of the

ALJ's denial of benefits in this case.  Pl.'s Br. at 13. Nothing in the record demonstrates that

Plaintiff ever requested any further clarification from Dr. Sanchez regarding the progress

notes, or alternatively, that Dr. Sanchez's letter omitted relevant information contained in the progress notes. Thus, nothing contained in the record suggests that Plaintiff was prejudiced, or that any evidentiary gap caused the ALJ to reach an unfair determination.

Turning back to Plaintiff's main issue regarding the ALJ's handling of Dr. Sanchez's opinion, Defendant counter-argues that the ALJ properly weighed Dr. Sanchez's opinion. Def.'s Mem. at 8. Defendant asserts that Dr. Sanchez's opinion stating that Plaintiff is "'unable to participate in any type productive task'" is not a medical opinion, but rather an issue reserved to the Commissioner. Id. at 9 (quoting Tr. at 295 and citing 20 C.F.R. § 416.927(d)). Defendant also argues that "[g]iven the record as a whole, including Plaintiff's diverse activities, the opinions of every other doctor in the record, and Dr. Sanchez's own conservative treatment of Plaintiff, substantial evidence supports the ALJ's decision to give little weight to Dr. Sanchez's unsupported opinion." Id. at 12-13.

Upon review, the undersigned finds that the ALJ articulated good cause reasons for discrediting the opinions of Dr. Sanchez, and those reasons are supported by substantial evidence. Specifically, the ALJ explained that the medical evidence supports a contrary finding. Tr. at 18. Dr. Sanchez opined that Plaintiff is "withdrawn and practically non-functional . . ." and that Plaintiff's negative symptoms have "rendered him unable to participate in any type of productive task . . . ." Tr. at 295. Dr. Sanchez's opinion, however, is not consistent with other medical sources who have stated Plaintiff is capable of simple work. See Tr. at 225 (Dr. Rosenberg's opinion that Plaintiff "would be able to complete simple tasks/work procedures and make routine work decisions"); Tr. at 276 (Dr. Pena noting that Plaintiff "appears mentally capable of carrying out simple, work related tasks . . . ."); Tr.

at 272 (Dr. Keiter's opinion that Plaintiff "is able to perform simple and more complex tasks independently").

The ALJ also explained that little weight was given to Dr. Sanchez's opinion because "Dr. Sanchez's opinion is not consistent with the claimant's own reported activities."  Tr. at 18.  The ALJ observed that although Dr. Sanchez found Plaintiff is not capable of any employment, is withdrawn, and is practically non-functional, Tr. at 18, Plaintiff and his mother both reported that Plaintiff is able to perform a wide range of daily activities including the following: cooking; cleaning; self-care; shopping; handling money; driving; interests in sports; babysitting his niece three days a week; doing yard work; using a computer; and watching television.  Tr. at 18 (referring to Tr. at 148-56 (6E) and Tr. at 269-73 (8F)).

In sum, upon review of the reasons provided by the ALJ and of the administrative transcript, the undersigned finds that the ALJ did not err in his handling of Dr. Sanchez's opinion.  The ALJ provided sufficient good cause reasons for discounting the opinion, and those reasons are supported by substantial evidence.

### 2.  Dr. Harper-Nimock (examining medical consultant).

Plaintiff argues that the ALJ "failed to adequately explain his reasoning for not crediting Dr. Harper-Nimock's examining consultant opinion."  Pl.'s Br. at 15.  Additionally, Plaintiff argues that "[t]he ALJ's decision as to RFC conflicts with the opinions of [his] own expert without rational explanation for the difference."  Id. at 15-16.

While Plaintiff frames his argument in terms of whether the ALJ assigned appropriate weight and provided sufficient reasons for discounting Dr. Harper-Nimock's opinion, it appears that the gravamen of Plaintiff's argument is that the ALJ did not fully consider

Plaintiff's obesity and its physical and potentially debilitating impacts. Id. at 17. Plaintiff

asserts that the ALJ never explained why he was not crediting portions of Dr. Harper-

Nimock's opinion regarding Plaintiff's obesity and its likely effect on Plaintiff's reduced range

of motion, capacity to ambulate, or limitations in prolonged sitting and walking. Id.

The ALJ gave Dr. Harper-Nimock's opinion, along with the non-examining state

agency medical consultants' opinions, "less weight" than others because they are "less

consistent with the record as a whole." Tr. at 18. Defendant asserts that even if the ALJ

erred in assessing Dr. Harper-Nimock's opinion, the error "was harmless because the

vocational expert identified jobs that were consistent with the physical limitations Dr. Harper-

Nimock opined . . . [and] . . . because even had the ALJ adopted the opinions [of Dr. Harper

-Nimock], he would still have found that Plaintiff was not disabled." Def.'s Mem. at 13.

A review of the ALJ's Decision reveals that the ALJ referred to and considered the

opinion of Dr. Harper-Nimock and her finding of obesity. Tr. at 16. Specifically, the ALJ

pointed to Dr. Harper-Nimock's Internal Medical Examination ("IME") dated February 7, 2011:

> It is noted that [Plaintiff] is 5'7" tall, weighs 237 pounds, and is
> obese (Exhibit 5F).   Pursuant to SSR 02-01p, obesity is
> considered a medically determinable impairment and its effects
> are considered when evaluating disability.  The combined effects
> of obesity with other impairments can be greater than each of the
> impairments considered separately.  Accordingly, the effects of
> [Plaintiff's] obesity were considered when assessing the claim
> under the listings and other steps of the sequential evaluation
> process, including the assessment of their residual functional
> capacity (RPC).

Tr. at 16-17 (referring to Tr. at 252-59). The ALJ discussed Dr. Harper-Nimock's opinion that

Plaintiff has "mild to moderate limitations for prolonged walking, standing, and climbing." Tr.

at 16 (referring to Tr. at 256).  The ALJ explained that Dr. Harper-Nimock also found Plaintiff

to have "no significant abnormalities, 5/5 strength, intact dexterity, negative straight leg raising, and normal sensory findings."  Tr. at 16.

Even if the ALJ erred by addressing the weight given to Dr. Harper-Nimock's opinion in a rather conclusory fashion, it is evident that the ALJ considered the opinion in detail elsewhere in the Decision.  And even if the RFC does not mirror the limitations suggested by Dr. Harper-Nimock regarding the "moderate to mild limitations for prolonged walking, sitting, standing, or climbing," the undersigned agrees with Defendant that at least some of the jobs identified by the VE would not be precluded by these limitations, see Tr. at 47 (VE identifying work at various exertional levels, including "medium," "light," and "sedentary"). Accordingly, any error in addressing the weight assigned to Dr. Harper-Nimock's opinion is harmless; to remand the matter for the ALJ to be more explicit regarding that weight would be pointless.

### 3.    Dr. Rosenberg (non-examining psychologist) and Dr. Pena (non-examining psychologist).

Plaintiff finally contends the ALJ erred in assigning weight to the opinions of non-examining state agency psychologists Dr. Rosenberg and Dr. Pena.  These are the non-examining opinions that the ALJ discounted in a single sentence along with Dr. Harper-Nimock's opinion (failing to refer to any of the opinions by name), stating all of them "are given less weight because they are less consistent with record as a whole."  Tr. at 18.  The ALJ relied instead on the opinion of consultative examiner Dr. Keiter regarding Plaintiff's mental limitations, assigning Dr. Keiter's opinion "[g]reat weight."  Tr. at 18.  Defendant asserts that Plaintiff's argument regarding Dr. Rosenberg and Dr. Pena is "meritless, as the

ALJ explained clearly why he gave the non-examining state agency psychologists less weight than the examining psychologist, [Dr. Keiter.]" Def.'s Mem. at 3-4.

Even though the ALJ stated that he gave the non-examining opinions "less weight," a review of the ALJ's RFC determination reflects that it actually accounts for the opinions of Dr. Rosenberg and Dr. Pena regarding Plaintiff's abilities and restrictions. First, the ALJ assigned a RFC that "limited [Plaintiff] to performing simple, routine repetitive tasks." Tr. at 14-15. Dr. Rosenberg opined that Plaintiff "would be able to complete simple tasks/work procedures and make routine work decisions." Tr. at 225. Dr. Pena noted that Plaintiff "appears mentally capable of carrying out simple, work related tasks . . . ." Tr. at 276. Second, the ALJ's RFC and the opinions of Dr. Rosenberg and Dr. Pena all reference Plaintiff's ability to interact with others, such as coworkers and supervisors adequately. Compare Tr. at 14-15 (ALJ's RFC stating that Plaintiff "retains the ability to relate adequately to coworkers and supervisors"), with Tr. at 225 (Dr. Rosenberg stating Plaintiff "would be able to deal with persons in authority adequately") and Tr. at 276 (Dr. Pena stating Plaintiff "is capable of . . . relating appropriately to others in a superficial fashion"). Third, the ALJ's RFC states that the Plaintiff "is limited to only occasional contact with the public," which sufficiently accounts for the opinions of Dr. Rosenberg and Dr. Pena as to contact with the public. Tr. at 15; see Tr. at 225 (Dr. Rosenberg stating that Plaintiff would function best in a work environment with no requirement for frequent social or public contact); Tr. at 276 (Dr. Pena stating Plaintiff "would likely function best in well structured situations that do not require extensive, or intense, interactions with others").

-20-

In an apparent attempt to show that the RFC leaves out aspects of Dr. Rosenberg and Dr. Pena's opinions, Plaintiff contends that the ALJ did not assess any limitations in the RFC "as far as coworkers and supervisors or the need for a well-structured work environment or a supportive work environment." Pl.'s Br. at 10. To the contrary, however, the language in the RFC reflects that the ALJ considered and assigned limitations that are consistent with the opinions.

The RFC directly addresses Plaintiff's abilities and limitations to interact with coworkers and supervisors. Tr. at 14-15 (stating Plaintiff "retains the ability to relate adequately to coworkers and supervisors" and "is limited to only occasional contact with the public"). This aspect of the RFC is also consistent with the findings of Dr. Rosenberg and Dr. Pena. See Tr. at 225 (Dr. Rosenberg's opinion that Plaintiff would be able to deal with authority appropriately, but would function best in environment with no requirement for frequent contact); Tr. at 276 (Dr. Pena's opinion that Plaintiff can relate appropriately to others in a superficial fashion, but would work best in environment with no requirement for extensive interaction with others).

Regarding Plaintiff's contention that he needs a "well-structured work environment or a supportive work environment," Pl.'s Br. at 10, the RFC does not use this exact phrase but it is adequately taken into account, Tr. at 14-15 (RFC that Plaintiff is "limited to performing simple, routine repetitive tasks" and "is limited to work settings where changes are infrequent and gradually introduced, and which do not require a high production pace"). This is consistent with the findings of both Dr. Rosenberg and Dr. Pena regarding work environments. See Tr. at 225 (Dr. Rosenberg stating that Plaintiff would be able to

consistently perform "within reasonably supportive and structured work environment with a well defined and repetitive work task routine); Tr. at  276 (Dr. Pena concluding that Plaintiff "appears mentally capable of carrying out simple, work related tasks but is likely to function at his best in well structured situations").

In sum, while the ALJ stated that "less weight" was assigned to the opinions of the non-examining psychologists, including Dr. Rosenberg and Dr. Pena, the RFC sufficiently takes into account these opinions.  Any error in the conclusory assignment of "less weight" or labeling the opinions "less consistent" is harmless because in reality, the RFC adequately reflects the limitations assigned by Dr. Rosenberg and Dr. Pena.

### V.  Conclusion

Upon thorough review of the administrative transcript, the undersigned concludes that the ALJ's Decision is supported by substantial evidence.

After due consideration, it is

**ORDERED**:

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2.    The Clerk is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on December 28, 2014.

*James R. Klindt*

**JAMES R. KLINDT**
United States Magistrate Judge

bc
copies to:
counsel of record